# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARC MOSHER,<br>    Plaintiff<br><br>v.<br><br>BRETT REVINGTON, as an<br>individual and in his position as<br>Standardized Bureau Director of the<br>Pennsylvania Horse Racing Commission,<br>    Defendant | :<br>:<br>:   No. 1:17-cv-471<br>:<br>:   (Judge Kane)<br>:<br>:<br>:<br>:<br>:<br>: |

## MEMORANDUM

Before the Court is Plaintiff Marc Mosher's ("Mosher") Motion for Preliminary Injunction. (Doc. No. 4.) The parties have briefed the motion (see Doc. Nos. 2, 8, 11), and on April 10, 2017, the Court held a hearing on the motion. For the reasons that follow, the Court will deny Mosher's Motion for Preliminary Injunction.

## I. BACKGROUND[1]

### A. Mosher's Complaint

On March 17, 2017, Mosher filed a complaint pursuant to 42 U.S.C. § 1983 alleging that his constitutional rights were violated by Defendant's failure to provide him with adequate due process regarding his ejection from The Meadows Race Track (the "Meadows"), where he alleges that he pursued a career as a licensed trainer, driver, and worker of standardbred race horses. (Doc. No. 1 ¶¶ 1, 2, 6.) Defendant is Brett Revington ("Defendant"), an individual

---

[1] The following background is taken from Mosher's complaint (Doc. No. 1), the exhibits to his complaint (Doc. No. 1-2), his motion for temporary restraining order and preliminary injunction (Doc. No. 4), his brief in support of the motion (Doc. No. 2), and Defendant's brief in opposition to Mosher's motion (Doc. No. 8), as well as the testimony and exhibits offered into evidence at the April 10, 2017 hearing on the motion.

1

serving as Standardbred Bureau Director of the Pennsylvania Horse Racing Commission (the "Commission"). (Doc. No. 1 ¶ 7.) Mosher alleges that Defendant "presides over all aspects of the everyday work of the Commission," including "issuing rulings on a supersedeas and the administrative function of seeing that hearings are scheduled by the Commission." (Id.)

Mosher alleges that he is licensed and in good standing with the Commission as a trainer, driver and worker. (Id. ¶ 8.) He alleges that he "had some problems in the past but was given a second chance by the Commission five years ago." (Id. ¶ 9.) Specifically, Mosher asserts that he was ejected by the Meadows on January 20, 2017.[2] (Id. ¶ 10, Doc. No. 1-2 at 1.) The "Notice of Ejection" issued by the Meadows states that Mosher's actions "have been inconsistent with the integrity of harness racing and the successful business operation of the Meadows." (Doc. No. 1-2 at 1.) As a consequence of the ejection, the notice directed that no horses "owned, trained, or in any way under your control are permitted to race, train, or be stabled at The Meadows." (Id.) Mosher alleges that the horse owners that he works with seek to race their horses in the Commonwealth of Pennsylvania, where there are three standardbred race tracks: the Meadows, Harrah's Philadelphia and Pocono Downs. (Doc. No. 1 ¶ 13.) Mosher's complaint alleges that only the Meadows is currently conducting races, and thus, is the only place in Pennsylvania that Mosher can run his horses. (Id.)

On January 21, 2017, through his counsel, Mosher appealed his ejectment to the Commission and Defendant, requesting a hearing on the ejection and a supersedeas, or stay of enforcement, pending a final decision on his appeal. (Doc. No. 1 ¶ 11, Doc. No. 1-2 at 2.) In

---

[2] Although Mosher alleges a ejection date of January 20, the "Notice of Ejection" from the Meadows attached as an exhibit to his complaint is dated January 18, 2017. (Doc. No. 1-2.)

support of his appeal of the ejection and request for a stay of enforcement, Mosher submitted only the letter of his counsel, which stated "[n]ot allowing his participation will cause irreparable harm to Mr. Mosher. He will lose his clientele if the penalty is imposed before he has his hearing. He will suffer further damage to his reputation and the action is likely to be given reciprocity in other jurisdictions." (Doc. No. 1-2 at 2.) On January 25, 2017, Defendant issued Commission Ruling 17008C granting Mosher a hearing on his appeal of the ejection but denying his request for a stay of enforcement of the ejection pending a decision on his appeal. (Doc. No. 1 ¶ 12, Doc. No. 1-2 at 3.) Mosher did not seek reconsideration of Defendant's denial of his request for a supersedeas, nor did he exercise his right to appeal the denial to the Commonwealth Court of Pennsylvania pursuant to the Pennsylvania Rules of Appellate Procedure. See Pa. R. A. P. 1501, 1512, 1732.

A hearing on Mosher's appeal of his ejection was scheduled for April 11, 2017. (Id. ¶ 17.) Mosher received notice of the hearing date on February 22, 2017.[3] (Def. Exh. 4.) After receiving notice of his hearing date on February 22, 2017, Mosher did not seek an expedited hearing date. Instead, three and a half weeks later, he filed his complaint with this Court on March 17, 2017.

Mosher alleges that his hearing rights are governed by the hearing procedures of 58 Pa Code 165.231, and cites the case of Moreno v. Penn National, 904 F. Supp. 2d 414 (M.D. Pa. 2012), where the court found 58 Pa Code 165.231 unconstitutional as written and as applied for

---

[3] Mosher alleges that it generally takes two to four months after the hearing date for the Commission to issue a final order, as the hearing examiner must await production of the transcript, draft a proposed decision, and submit it to the Commission, which will issue a final ruling at the next scheduled Commission meeting. (Doc. No. 1 ¶ 17.) Mosher alleges that if briefing is required, a ruling could be delayed by an additional two months. (Id.)

failure to provide a prompt hearing where no stay of enforcement was in place. (Doc. No. 1 ¶¶ 18-19.) Mosher alleges that after the Moreno decision, the Commission began to issue a stay of enforcement in almost all cases so that its hearing procedures would comply with constitutional due process standards. (Id. ¶ 20.) However, Mosher alleges that recently the Commission has "backslid to its old ways" by initiating a policy of granting hearings but denying a stay of enforcement, while doing nothing to ensure that the hearing and final decision occur within a constitutionally appropriate timeframe. (Id. ¶ 21.)

Mosher's complaint alleges two claims for relief: count one asserts a 42 U.S.C. § 1983 claim against Defendant for violation of his constitutionally guaranteed right to due process, and count two seeks a declaratory judgment to the effect that the "hearing system for ejections as defined in 3 PaCS 9326 and Pennsylvania Act 7 is unconstitutional as written and applied as it fails to guarantee the licensee a hearing and its result in a timely manner." (Id. ¶¶ 24-32.)

Mosher filed a Memorandum of Law in Support of Application for T.R.O. and Preliminary Injunction (Doc. No. 2).[4] Following a telephone conference with the Court, Defendant filed his brief in opposition to Plaintiff's motion on March 28, 2017.[5] (Doc. No. 8.) Mosher subsequently filed a reply brief. (Doc. No. 11.) On April 4, 2017, the Court issued an order denying Plaintiff's request for a temporary restraining order and scheduling a hearing on his request for preliminary injunction for April 10, 2017. Mosher seeks a preliminary injunction enjoining Defendant from continuing to enforce the ejection of Mosher from the Meadows until

---

[4] Mosher filed his formal Motion for Temporary Restraining Order and Preliminary Injunction on March 21, 2017.

[5] On that same date, Defendant also filed a motion to dismiss Plaintiff's complaint (Doc. No. 9), with supporting brief (Doc. No. 10).

4

he receives a hearing and final decision on his appeal of his ejection/denial of access. (See Doc. No. 2 at 5.)

B. **Evidence Offered by Mosher at the Preliminary Injunction Hearing**

At the April 10, 2017 hearing, Mosher offered only his own testimony and that of Defendant Revington in support of his motion for preliminary injunctive relief. Mosher testified that he currently works as a trainer, driver, and assistant trainer of horses. He testified that he had "some incidents" in the past, but was relicensed by the Commission in March of 2012. Mosher testified that he drives horses in most of the county fair races in Pennsylvania, trying to accumulate enough points to race horses at the Meadows in the Pennsylvania Fair Stakes finals. He further testified that during the time since the January 18, 2017 ejection, he has had the opportunity to drive horses and work as an assistant trainer at the Meadows for a trainer named Toni Freitas, but could not take advantage of the opportunity because of his denial of access to the Meadows. As a result, he has lost income.

Mosher also offered the testimony of Defendant in support of his motion for injunctive relief. Mosher's counsel questioned Defendant about the process he engaged in related to the issuance of Commission Ruling 17008C, which granted Mosher's appeal but denied his request for a supersedeas. He also questioned Defendant about the process involved in scheduling a hearing on an appeal of a Commission Ruling, and the Commission's issuance of a final decision on an appeal following a hearing. Defendant confirmed that Mosher's April 11, 2017 hearing[6]

---

[6] At the request of the Court, the parties submitted a letter updating the Court on Mosher's administrative hearing. The April 11, 2017 letter stated that: "Mr. Mosher's hearing occurred this morning. The presentation of evidence and argument lasted less than an hour. Mr. Pincus informed [defense counsel] that the ejection should be overturned because: (1) the ejection itself was not reasonable; and (2) the hearing occurred beyond the acceptable timeframe.

5

on his appeal was scheduled approximately 81 days after the date of his appeal, which was the earliest available date. Defendant also confirmed that it could take two to four months after the hearing to receive a final decision from the Commission, due to the production of a transcript, potential briefing, the drafting of a decision by the hearing officer, and final approval of the decision by the Commission. Mosher's counsel bases his claim for injunctive relief on what he views as the Commission's unconstitutional procedures related to an appeal of an ejection.

C. **Evidence Offered by Defendant at the Hearing**

At the hearing, Defendant testified on his own behalf that Mosher was originally ejected from the Meadows on October 8, 2003, and therefore, the "Notice of Ejection" sent to him on January 18, 2017 by the Meadows is more properly characterized as a continued denial of access. The "Notice of Ejection," submitted into evidence at the hearing as Defendant's Exhibit 3, confirms this sequence of events, providing:

> In reviewing your ejection from The Meadows on October 8, 2003, pursuant to 4 P.S. 325.215(c) and 58 Pa Code 183.340, 185.254, and 189.64, your ejection and restriction from all Meadows owned property, including The Meadows Racetrack, the stable area, the grandstand area, parking areas, and OTB facility, is hereby upheld.

Def. Exh. 3 at 1.)[7] Curiously, neither party offered evidence explaining what conduct or request may have prompted the issuance of the January 18, 2017 "Notice of Ejection" by the Meadows.

Further, Defendant testified that Mosher's self-described "second chance" by the

---

I am informed that no party made a request to expedite the transcript. The hearing officer agreed to shorten the briefing schedule to a month after the transcript arrives." (Doc. No. 18.)

[7] Mosher maintains that he never received notice of an October 8, 2003 ejection, and therefore, the January 18, 2017 Notice should be considered an original ejection. Defendant confirmed that the Commission has no documentation of the Meadows' October 8, 2003 ejection of Mosher.

6

Commission five years ago consisted of the Commission's issuance of a conditional license to him in 2012. He testified that as a conditional licensee, Mosher is potentially subject to greater supervision by the Commission, including the possibility that he may be required to submit to random drug testing. Defendant testified that Mosher's conditional license expires on March 20, 2019. He also testified that the Meadows was the only one of the three Pennsylvania standardbred race tracks open for business at the time Mosher filed his complaint. However, as of the date of the hearing, the other two standardbred race tracks are now open.

Defendant testified that he makes a decision regarding a request for a stay of enforcement of an ejection pending an appeal based on the Notice of Ejection, communication from the licensee, and a review of records contained in the United States Trotting Association ("USTA") database.[8] Defendant testified that he reviewed the USTA database in connection with Mosher's request for an appeal and a stay of enforcement of the ejection pending appeal. With regard to Mosher, Defendant testified that his history includes a 2001 incident where he injected a horse, four "medication violations" since 2005, and the denial of the issuance of a license in New York in 2014. He testified that he also considered in making his decision the fact that Mosher had been ejected/denied access to the Meadows since 2003, and accordingly, has not been physically present at the Meadows since 2003. Defendant testified that based on his assessment of all of the above, he determined that Mosher would not be subject to irreparable harm upon denial of his request for a stay of enforcement of the ejection during the pendency of his appeal.

---

[8] Defendant testified that the USTA database is a national record-keeping database containing information pertaining to fines, suspensions, and race results with regard to licensees.

## II. LEGAL STANDARD

### A. Injunctive Relief

The law is clear that preliminary injunctive relief is an "extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." Figueroa v. Precision Surgical, Inc., 423 F. App'x 205, 208 (3d Cir. 2011) (emphasis in original) (quoting Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)). In order to make a clear showing of an entitlement to that extraordinary remedy, a movant must demonstrate "(1) a substantial likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." Ace Am. Ins. Co. v. Wachovia Ins. Agency, Inc., 306 F. App'x 727, 730 (3d Cir. 2009) (citing Kos Pharms. Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004)). While a showing as to all four elements is required, the United States Court of Appeals for the Third Circuit has held that "a failure to show a likelihood of success or a failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction." In Re Arthur Treacher's Franchisee Litig., 689 F.2d 1137, 1143 (3d Cir. 1982); Adams v. Freedom Forge Corp., 204 F.3d 475, 484 (3d Cir. 2000).

### B. Section 1983 Procedural Due Process Claim

"Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors." Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)). To state a claim under this section, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right,

privilege, or immunity secured by the Constitution or laws of the United States.  See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Adkins, 487 U.S. 42, 48 (1988)).

To prevail on a procedural due process claim under Section 1983, Mosher must demonstrate (1) that he possessed a life, liberty, or property interest within the meaning of the Fourteenth Amendment, and (2) that he did not have procedures available to him that would provide him with "due process of law."  Rockledge Dev. Co. v. Wright Twp., 2011 WL 588068, at *2 (M.D. Pa. Feb. 10, 2011) (citing Robb v. City of Phila., 733 F.2d 286, 292 (3d Cir. 1984)). Specifically, Mosher must prove the following five elements in connection with a Section 1983 procedural due process claim:

> (1) that he was deprived of a protected liberty or property interest; (2) that the deprivation was without due process; (3) that the defendant subjected the plaintiff, or caused the plaintiff to be subjected to, this deprivation without due process; (4) that the defendant was acting under color of state law; and (5) that the plaintiff suffered injury as a result of the deprivation without due process.

Id. (citing Sample v. Diecks, 885 F.2d 1099, 1113-14 (3d Cir. 1989)).

## III. DISCUSSION

Judged against the foregoing benchmark legal standards, the Court finds that Mosher has failed to meet his burden of establishing his entitlement to the "extraordinary and drastic remedy" of preliminary injunctive relief.  Figueroa, 423 F. App'x at 208.  At the outset, the Court notes that it is far from clear whether Mosher has demonstrated a reasonable probability of success on the merits, as is required for the issuance of a preliminary injunction.  However, the Court refrains from undertaking a full analysis of the merits of the complaint in connection with this motion for preliminary injunctive relief given the procedural posture of this case.

9

Specifically, assuming that Mosher has alleged an interest subject to due process protection,[9] the issues related to Mosher's due process rights surrounding his appeal of his ejection/denial of access to the Meadows, as well as the denial of his request for a stay of enforcement of that decision pending the outcome of his appeal, are best addressed by this Court after full briefing on those issues in connection with Defendant's pending motion to dismiss Mosher's complaint. Moreover, determination of the likelihood of success on the merits is unnecessary in any event, given Mosher's failure to carry his burden of demonstrating that he will suffer irreparable harm in the absence of injunctive relief.

To establish irreparable injury, a plaintiff must show an impending harm that "cannot be redressed by a legal or an equitable remedy following a trial." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989). "The possibility that adequate compensation or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Acierno v. New Castle Cnty., 40 F.3d 645, 653 (3d Cir. 1994). Plaintiff must make a "clear showing of immediate, irreparable injury." Cont'l Grp, Inc. v. Amoco Chem. Corp., 614 F.2d 351, 359 (3d Cir. 1980) (citation omitted).

As to irreparable harm, Mosher argues in his brief that his "income is derived from training horses and running them in races, driving horses and working at the track for others," and while a decision on his appeal of his ejection is pending, he is precluded "from relying on his license to pursue racing horses." (Doc. No. 2 at 4.) At the preliminary injunction hearing,

---

[9] A horse trainer's license has been found to exhibit "sufficient indicia of a liberty or property interest to survive a motion to dismiss." Moreno, No. 12-1553, 2012 WL 3637316 at *7 (M.D. Pa. Aug. 22, 2012); see Adamo v. Dillon, No. 10-2383, 2011 WL 864387 (M.D. Pa. Mar. 10, 2011).

10

Mosher offered no evidence to support this claim, but instead testified as to his intent to race horses in upcoming county fair races despite his ejection from the Meadows. Likewise, Mosher produced no evidence supporting his claim that being subject to sanction prior to a hearing "implies to the public that [he] is guilty of some grave offense," which is "devastating to [his] career and cannot be redressed by money damages." (Id.) At the hearing on his motion, Mosher testified that he has lost business as a result of his ejection from the Meadows on January 18, 2017, as he was unable to race horses or to work as an assistant trainer for Toni Frietas at the Meadows.

Defendant makes two arguments as to why Mosher fails to demonstrate "irreparable injury" justifying injunctive relief. First, Defendant points out that Mosher seeks monetary damages for Defendant's alleged violation of his constitutional rights in his complaint. (See Doc. No. 1 at 6) (seeking a judgment in his favor as well as "[d]amages, including for hurting Plaintiff's business."). Defendant argues that if Mosher ultimately proves a denial of his due process rights, he can seek damages and establish the monetary value of his lost business. (Doc. No. 8 at 12.) In support of his argument, Defendant cites Harsco Corp. v. Novetas Solutions, LLC, No. 13-cv-2726, 2014 WL 2041818 at *4 (M.D. Pa. May 16, 2014), where Judge Rambo denied a motion for preliminary injunction on the basis that the plaintiff had not demonstrated irreparable harm. In Harsco, the court found that the potential injury to plaintiff was "merely speculative." Id. In its analysis, the court noted that upon viewing the record as a whole, plaintiff had not "identified any contracts that were broken, any third parties with whom it suffered a loss of reputation or goodwill, or any other evidence of damages." Id. at *4.

In addition to his argument regarding Mosher's request for damages and failure to

establish injury that would be irreparable absent the issuance of an injunction, Defendant also argues that the chronology of Mosher's actions in connection with the filing of this action demonstrate a delay on his part that is inconsistent with a showing of an "immediate, irreparable" injury. Cont'l Grp., Inc., 614 F.2d at 359 (citation omitted) (emphasis added). Defendant points out that, after Mosher received notice from Defendant granting a hearing on his appeal but denying his request for a stay of enforcement on January 25, 2017, he took no further action until filing his complaint in this Court on March 17, 2017. He did not appeal the denial of his request for a stay of enforcement to Commonwealth Court, or request an expedited hearing, either before or after he received notice of the April 11, 2017 hearing date on February 22, 2017. Instead, three and a half weeks after receiving notice of his hearing date, Mosher filed his complaint with this Court. Accordingly, Defendant argues that the chronology of Mosher's actions here fail to demonstrate that he was suffering or about to suffer an immediate, irreparable harm.

Having considered Mosher's moving papers, the briefs of the parties, and the testimony offered at the hearing and exhibits submitted into evidence, the Court finds that Mosher has failed to meet his burden of establishing immediate, irreparable harm justifying the grant of injunctive relief. Mosher has simply not made a "clear showing" of the irreparable nature of the business and reputational harm that he is, or will be, subject to as a result of his inability to utilize his conditional license at the Meadows pending a final decision from Defendant and the Commission on his appeal. Cont'l Group, Inc., 614 F.2d at 359. Specifically, the Court finds unavailing Mosher's unspecific testimony regarding his loss of income resulting from his inability to utilize his conditional license at the Meadows since January 18, 2017, as such a loss

of income could potentially be redressed by a legal or equitable remedy after a trial. See Instant Air Freight Co., 882 F.2d at 801 (noting that irreparable injury is evidenced by an impending harm that "cannot be redressed by a legal or equitable remedy following a trial"). Further, the testimony offered at the hearing that clarified that Mosher has not worked at the Meadows since 2003 militates against a finding of irreparable harm, as this is clearly not a situation where a trainer is suddenly faced with ejection from a track where he has been working and expecting to continue working. See, e.g., Moreno, 2012 WL 3637316 at *2, *7 (finding irreparable harm where trainer faced immediate removal of horses from grounds of racetrack where he had been racing horses and planned to continue racing horses).

Additionally, Plaintiff's delay of several weeks in seeking relief from this Court after realizing that he would not obtain a hearing and decision from Defendant within the thirty day timeframe that he believes is constitutionally permissible, also undercuts his efforts to establish immediate, irreparable harm entitling him to injunctive relief. Counsel for Mosher offered no explanation for this delay beyond stating that he waited for the expiration of thirty days after January 25, 2017, which is the timeframe Plaintiff maintains is constitutionally permissible for a decision on his appeal in the absence of a stay of enforcement. However, that date was February 24, 2017, and three weeks elapsed between that date and March 17, 2017, the date Mosher ultimately filed his complaint with this Court. See Smart Vent Prod., Inc. v. Crawl Space Door Sys., Inc., No. 13-5691, 2016 WL 4408818, at *12 (D.N.J. Aug. 16, 2016) (noting that "delay in seeking injunctive relief undercuts the urgency that forms the cornerstone of preliminary injunctive relief – and indeed, indicates a lack of immediacy"). Accordingly, the Court will deny Mosher's motion for a preliminary injunction due to his failure to establish that he will suffer an

immediate, irreparable harm absent the issuance of injunctive relief.

## IV. CONCLUSION

For the reasons discussed above, the Court will deny Mosher's Motion for Preliminary Injunction. An appropriate Order follows.

                                                 s/ Yvette Kane
                                                 Yvette Kane, District Judge
                                                 United States District Court
                                                 Middle District of Pennsylvania